## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHAD LIGHTFOOT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-12552** |
| **SHERIFF MARLIN GUSMAN** | **SECTION: "J"(5)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.    *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

### Procedural History

Petitioner, Chad Lightfoot, is a convicted inmate currently incarcerated at the Rayville Detention Center in Rayville, Louisiana.    In November 2016, Lightfoot was charged in a four-count bill of information with monetary instrument abuse, forgery, bank fraud, and fraudulent acquisition of a credit card.[1]    In September 2017, a jury unanimously found him guilty as charged on all four counts.[2]    His motions for new trial and for post-verdict judgment of acquittal were denied, and he was sentenced to five years at hard labor on each

---

[1]  State Rec., Vol. 1 of 9, Bill of Information, Orleans Parish.

[2]  State Rec., Vol. 1 of 9, Trial Minute Entry, 09/12/17.

count, to run concurrently.[3]    The State filed a multiple bill of information.[4]    Following a multiple-offender adjudication, he was found guilty and ultimately resentenced as a second-felony offender on count three to seven and one-half years at hard labor, to run concurrently.[5]    The trial court denied his motion to reconsider the sentence.[6]

On direct appeal, his appointed counsel raised nine assignments of error:    (1) the jury venire was improperly selected; (2) the trial court erred in prohibiting the use of "backstriking"; (3) he was denied a fair trial and the ability to present a complete defense; (4) the verdict was contrary to law and the evidence; (5) the trial court erred in denying his motion for a new trial; (6) the trial court erred in denying the motion for post-verdict judgment of acquittal; (7) the trial court erred in denying the motion for mistrial; (8) the trial court erred in admitting multiple State's exhibits that were not properly authenticated; and (9) the trial court erred in failing to read the defense instructions to the jury.[7]    Lightfoot filed a *pro se* brief raising three assignments of error:    (1) he was denied a fair trial and the ability to present a complete defense; (2) the verdicts were contrary to law and the evidence;

---

[3]  State Rec., Vol. 1 of 9, Sentencing Minute Entry, 10/4/17. *See* State Rec., Vol. 3 of 9, Motions for New Trial and for Post-Verdict Judgment of Acquittal.

[4]  State Rec., Vol. 1 of 9, Multiple Bill of Information.

[5]  State Rec., Vol. 1 of 9, Minute Entries, 7/20/18 and 8/6/18; State Rec., Vol. 7 of 9, Sentencing Transcript.

[6]  State Rec., Vol. 1 of 9, Order denying Motion to Reconsider Sentence, 8/6/18. *See* State Rec., Vol. 3 of 9, *Pro Se* and Counseled Motions to Reconsider Sentence.

[7]  State Rec., Vol. 8 of 9, Louisiana Fourth Circuit No. 2018-KA-0336, Appellant Brief, p. 10.

and (3) he was subjected to double jeopardy.[8]    On December 12, 2018, the Louisiana Fourth Circuit Court of Appeal affirmed his convictions and sentences.[9]    On May 28, 2019, the Louisiana Supreme Court denied his application for writ of certiorari.[10]

On or about August 30, 2019, Lightfoot filed the instant federal application for habeas corpus relief.[11]    In that application, he asserts four grounds for relief:    (1) he was denied the right to present a defense; (2) there was insufficient evidence to convict him; (3) he was subjected to double jeopardy; and (4) the trial court erred in allowing the State's exhibits into evidence without proper authentication.    The State does not contend that the federal application is untimely or that the claims were not exhausted; rather, the State argues that the claims should be denied on the merits.[12]

Before the undersigned is also a Motion for Discovery filed by Lightfoot in July 2020.[13] Lightfoot requests that the Court hold a "deposition" at which a limited number of witnesses, including his criminal defense attorney and the prosecutor in his criminal case, the attorney for the State in these habeas proceedings, and Lightfoot himself may be "asked relevant questions about the facts, evidence, and the case."    He alleges that the discovery will show

---

[8]  State Rec., Vol. 9 of 9, *Pro Se* Appellant Brief, p. 1.

[9]  *State v. Lightfoot*, 2018-KA-0336, 2018 WL 6536999 (La. App. 4 Cir. 12/12/18); State Rec., Vol. 8 of 9.

[10]  *State v. Lightfoot*, 2019-K-0055 (La. 2019), 273 So.3d 313; State Rec., Vol. 9 of 9.

[11]  Rec. Doc. 1, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus.    *See also* Rec. Doc. 16, Memorandum in Support.

[12]  Rec. Doc. 13.

[13]  Rec. Doc. 17.

that "[t]he state prosecutor, representative for the respondent herein, has knowingly and purposely made a false statement and or filing before this court, misrepresenting the facts and or evidence violating *Napue v. Illinois*."[14]     For the reasons set forth herein, that motion is denied.

## Facts

On direct appeal, the Louisiana Fourth Circuit briefly summarized the facts adduced at trial:

> On April 16, 2016, Lightfoot visited a local title company, ABC Title, where he obtained a Louisiana identification card, which displayed his picture but bore the name John Hawkins (hereinafter referred to as "Hawkins"). Later that year, on August 19, 2016, Lightfoot went to the Greater New Orleans Federal Credit Union (hereinafter referred to as the "Credit Union") and presented himself as Hawkins.

> Danielle Williams, a ten-year employee of the Credit Union, who was responsible for opening new accounts and loan processing, testified that Lightfoot represented himself as Hawkins. Lightfoot successfully opened a checking account. Ms. Williams explained the application process for the opening of checking accounts. She stated that the system is computerized and testified that she scanned the social security card and ID given to her by Lightfoot into the system. She further testified that Lightfoot deposited cash and a $9.00 check from the Louisiana Department of Revenue, payable to Hawkins, to open the account. He applied for a credit card with a $2,000.00 limit, also in the name of Hawkins.[15]  Ms. Williams recalled that there was video surveillance footage from the day of the event. The video was played for the jury, and Ms. Williams positively identified Lightfoot as the person who represented himself as Hawkins.

> Testimony was also presented from an administrator at the Credit Union who became suspicious when she recognized the employer's name listed on the credit application and the picture on the ID. She delved further by pulling up a previous transaction, which contained a photo of Lightfoot. The photos of Lightfoot and Hawkins were the same. All employees of the credit union who

---

[14]  Rec. Doc. 17, p. 1.

[15]  The credit card application was submitted on August 19, 2016 and an Adverse Action Notice declining credit was sent on August 27, 2016.

testified were unequivocal that there was never any indication that Lightfoot was opening an account for anyone other than himself. The Director of Compliance for the Credit Union contacted the New Orleans Police Department.[16]

### Standards of Review on the Merits

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."    28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").    With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."    *Bell v. Cone*, 535 U.S. 685, 694 (2002).    A state-court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts

---

[16]    *State v. Lightfoot*, 2018 WL 6536999, at *1-2 (footnote in original).

the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent.    *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010).    An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case."    *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one."    *Bell*, 535 U.S. at 694.    A state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.    *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").    "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA.    *Harrington v. Richter*, 562 U.S. 86, 102 (2011).    Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents."    *Id*. (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The AEDPA's deferential standard of review under Section 2254(d) and *Williams*, 529

U.S. at 362, applies only to claims adjudicated on the merits by the state courts.    28 U.S.C. § 2254(d).    With respect to claims that are not fully adjudicated on the merits in state court, the deferential AEDPA standards of review do not apply.    *Cullen v. Pinholster*, 563 U.S. 170, 185-86 (2011); *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003).    Instead, the federal courts review those claims under pre-AEDPA *de novo* standards of review.    *Id.* at 598 (citing *Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying *de novo* standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009).

## Analysis

### A.  *Exclusion of Evidence Regarding Power of Attorney/Right to Present a Defense*

Lightfoot asserts that the trial court improperly excluded evidence regarding the power of attorney given to him by John Hawkins in violation of his right to present a defense. He argues that Hawkins, his wife's uncle who was incarcerated and serving a life-sentence since 2003, was a "key player to the defense and to explaining the truth of the events to the jury," because he "orally authorized Lightfoot via Power of Attorney to conduct and handle all his financial and business affairs."[17]    He claims that Hawkins' testimony and the written power of attorney was necessary to establish that "Lightfoot's actions were justifiable and authorized... and that [Lightfoot] had no intentions of breaking any laws of the State."[18]

By motion in limine, the State successfully challenged Hawkins' testimony on grounds of relevancy.[19]    The trial court issued a per curiam outlining the reasons for its decision

---

[17]  Rec. Doc. 16, p. 8.

[18]  *Id.* at 7-8.

[19]  State Rec., Vol. 4 of 9, Motion in Limine to Exclude Testimony of Defense Witness,

finding Hawkins' testimony about the power of attorney that authorized Lightfoot to act on his behalf irrelevant and inadmissible.[20]    In granting the motion in limine, the trial court concluded that Hawkins' testimony regarding power of attorney was not relevant because essentially "no authorization by another entitled someone else to misrepresent his or her own identity and sign a document as though he *is* another person."[21]    The trial court rejected the defense position that authorization by power of attorney to act on behalf of another and sign documents encompassed committing a series of crimes using his identity. The court also noted that its position was strengthened because the defense itself conceded authorization had limited applicability to the counts of forgery and monetary instrument abuse and was essentially irrelevant as to the other two counts.[22]    On supervisory review, the court of appeal found no abuse of discretion in granting the motion in limine.[23] Nonetheless, the defense was allowed to call Hawkins as a witness at trial and ask him questions regarding the oral power of attorney he gave Lightfoot to act on his behalf.    The trial court sustained the State's objection to relevancy when the defense sought to introduce the certified written power of attorney that had been reduced to writing several months after the transactions.    The evidence was proffered at the end of trial.[24]

---

8/24/17.

[20]    State Rec., Vol. 8 of 9, Per Curiam.

[21]    *Id.*, Per Curiam; *see also*, State Rec., Vol. 8 of 9, Fourth Circuit Writ No. 2017-K-0749 (Exhibit L-Transcript of Pre-Trial Conference, August 25, 2017).

[22]    *Id.*, Per Curiam (referencing Lightfoot's writ application No. 2017-0749, p. 12).

[23]    State Rec., Vol. 8 of 9, *State v. Lightfoot*, 2017-K-0749 (La. App. 4 Cir. Sept. 7, 2017).

[24]    State Rec., Vol. 7 of 9, Trial Transcript, pp. 163-166, 217.

On appeal, Lightfoot asserted that he was denied a meaningful defense due to the exclusion of this evidence.    Consistent with the appellate court's pretrial ruling, the Louisiana Fourth Circuit rejected the claim as follows:

> In this assignment of error, Lightfoot argues that the trial court failed to allow him to present a defense that he had authorization to perform the matters precipitating the charges and erred in not allowing Hawkins to testify that he gave Lightfoot the authority to deposit the check and open the accounts. Prior to trial, the State filed a Motion in Limine to exclude the testimony of Hawkins, contending that the evidence that Hawkins authorized Lightfoot's actions did not constitute an affirmative defense to any of the crimes charged. At the conclusion of the hearing, the trial court determined that Hawkins' testimony was not a viable defense to any of the crimes which defendant was charged and was then irrelevant. The trial court then granted the State's Motion in Limine. Lightfoot filed a writ application seeking review of the trial court's ruling. This Court denied the writ application.
>
> Nonetheless, Lightfoot called Hawkins to testify. In accordance with Lightfoot's theory of the case, Hawkins testified he had given Lightfoot an oral power of attorney to "conduct [his] affairs" while he (Hawkins) was confined in prison. Hawkins further testified that the oral power of attorney was subsequently reduced to a written document, wherein he gave Lightfoot "full authorization to conduct business in the interest of me during my confinement." Lightfoot attempted to introduce the written power of attorney, dated January 17, 2017, into evidence during Hawkins' testimony but the trial court sustained the State's objections of hearsay and relevance. A proffer of Hawkins' testimony regarding the written power of attorney as well as the written power of attorney itself was made. In denying the motion for new trial, the trial court again reiterated that the power of attorney was not executed until after Lightfoot attempted to open various accounts in Hawkins' name thereby rendering the likelihood of an innocent explanation for his conduct *de minimis.*
>
> Accordingly, we find the trial court did not err in finding the testimony inadmissible. Furthermore, the existence of a power of attorney was likewise not relevant to the issue of whether Lightfoot committed the crimes of monetary instrument abuse, forgery, bank fraud, or fraudulent acquisition of a credit card. Thus, we find no merit to this assignment of error.[25]

The Louisiana Supreme Court denied relief without additional stated reasons.

---

[25] *Lightfoot*, 2018-0336, 2018 WL 6536999, at *6-7.

The right of an accused to present a defense has long been recognized as "a fundamental element of due process."    *Washington v. Texas*, 388 U.S. 14, 19 (1967).    "A defendant's right to present a complete defense under the Sixth Amendment is 'an essential attribute' of our criminal justice system but it is not without limits."    *United States v. DeLeon*, 565 F. Appx. 297, 303 (5th Cir. 2014) (citing *United States v. Najera Jimenez*, 593 F.3d 391, 402 (5th Cir. 2010) (internal quotation marks and citation omitted).    Controlling law permits the exclusion of evidence consistent with the constitutional guarantee of a complete defense:

> "[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986). However, the Constitution also "permits judges to exclude evidence that is ... only marginally relevant or poses an undue risk of ... confusion of the issues." *Holmes v. South Carolina*, 547 U.S. 319, 326-27, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) (internal quotation and citations omitted).

*United States v. Rodriguez*, 762 F. Appx. 197, 198 (5th Cir. 2019); *see also Caldwell v. Davis*, 757 F. Appx. 336, 339-40 (5th Cir. 2018).    The right to present even relevant evidence may be limited, as the Supreme Court has explained:

> While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.

*Holmes v. South Carolina*, 547 U.S. 319, 326 (2006).    As the Supreme Court has observed, "[o]nly rarely have we held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence."    *Nevada v. Jackson*, 569 U.S. 505, 509 (2013) (citing *Holmes v. South Carolina*, 547 U.S., at 331, 126 S.Ct. 1727 (rule did not rationally serve any discernible purpose); *Rock v. Arkansas*, 483 U.S. 44, 61, 107 S.Ct.

2704, 97 L.Ed.2d 37 (1987) (rule arbitrary); *Chambers v. Mississippi*, 410 U.S. 284, 302–303, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (State did not even attempt to explain the reason for its rule); *Washington v. Texas*, 388 U.S. 14, 22, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) (rule could not be rationally defended)).

The question of whether evidence is constitutionally admitted or excluded is a mixed question of law and fact.    *Boyer v. Vannoy*, 863 F.3d 428, 447-49 (5th Cir. 2017).    Under the applicable standard of review, this Court therefore must determine whether the state-court determination is contrary to or involved an unreasonable application of Supreme Court precedent.    *Caldwell*, 757 F. Appx. at 338-41.

Initially, Lightfoot appears to challenge the trial court's determination in weighing the relevancy of the power of attorney when granting the motion in limine to exclude the evidence.[26]    He argues that the state prosecutor misrepresented the counterfeit nature of the state tax-refund check, which led the trial court erroneously to grant the motion in limine and conclude mistakenly that it was irrelevant to whether he had authorization to sign Hawkins' name and deposit that check.    To the extent Lightfoot contends that the evidence was impermissibly excluded at trial by an erroneous ruling on the State's motion in limine in violation of Louisiana evidence rules or law, that claim is not cognizable on federal habeas review.    A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law."    *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); *see also Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law); *accord Molo v. Johnson*, 207 F.3d 773, 776

---

[26]    Louisiana Code of Evidence Article 402 provides that "evidence which is not relevant is not admissible." La. C.E. art. 402.

n. 9 (5th Cir. 2000); *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996)); *see also Hogue v. Johnson*, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal habeas review).    Federal habeas review is limited to errors of constitutional dimension; thus, federal courts do not sit to review the mere admissibility of evidence under state law.    *Estelle*, 502 U.S. at 67-68; *Gonzales v. Thaler*, 643 F.3d 425, 429 (5th Cir. 2011); *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998).

The only issue before the Court on habeas review is whether the alleged improper exclusion or admission of evidence constituted a denial of fundamental fairness under federal law.    *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998) ("[A] state trial court's evidentiary rulings will mandate habeas relief when errors are so extreme that they constitute a denial of fundamental fairness."); *Woods v. Estelle*, 547 F.2d 269, 271 (5th Cir. 1977).    "Erroneous exclusion of evidence is fundamentally unfair if the evidence was material in the sense that it was crucial, critical, and highly significant."    *Porretto v. Stalder*, 834 F.2d 461, 465 (5th Cir. 1987).

Here, the state courts rejected the claim that the exclusion of evidence denied him the right to present a defense.    The appellate court reasoned that evidence and testimony regarding the purported defense of authorization stemming from a written power of attorney executed after the transaction was immaterial and irrelevant insofar as establishing a defense to the crimes charged.    This Court need not determine whether that state-court decision was correct; the only question before this Court on habeas review is whether the decision rejecting the claim that he was denied a defense was "contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Lightfoot has not met this burden.

On August 19, 2016, Lightfoot falsely presented the federal credit union with a Louisiana I.D. he had obtained with his own picture but all of Hawkins' personal information, a signed state tax-refund check issued in Hawkins' name and Hawkins' social security card, in order to negotiate the check and open a checking/savings account in Hawkins' name, which violated state law (as well as federal credit union policy that prohibited opening new accounts on behalf of others regardless of whether or not one has an existing power of attorney). He also applied for a credit card in Hawkins' name. Lightfoot sought to use Hawkins' testimony and evidence of a written power of attorney he executed after the incident in January 2017, as a defense that Lightfoot was justified in believing he had unlimited authority to act on behalf of Hawkins for his financial and business affairs.

The evidentiary rule in this case was applied to exclude immaterial and irrelevant evidence. Notably, Lightfoot has not argued that Louisiana Code of Evidence Article 402 is arbitrary or disproportionate to the purpose it serves. *See United States v. Scheffer*, 523 U.S. 303, 308 (1998). Furthermore, evidence of a written power of attorney that was executed months after the fraudulent transaction—during which no power of attorney would have been accepted even if offered—purporting to instill in Lightfoot a belief that he could pretend to be Hawkins under the pretense of acting on his behalf in furtherance of Hawkins' financial and business affairs, was not relevant as a defense. Nor would an oral power of attorney executed before the transaction have been relevant to establish a defense that he, in fact, acted legally and was justified in fraudulently assuming Hawkins' identity to obtain a Louisiana state identification card, which along with Hawkins' social security card and tax-

refund check he used to apply for a federal credit union account and a credit card in Hawkins' name.

Despite the limitations, evidence surrounding the oral power of attorney was introduced at trial.    Hawkins testified to his intent that the power of attorney he gave Lightfoot was unlimited in scope and would have included his authorization for every single transaction at issue.    In addition to Hawkins, his niece/Lightfoot's wife, Geralyn Hawkins, and Lightfoot himself testified at trial to the oral power of attorney that Hawkins gave Lightfoot to act on his behalf and the unlimited scope and authority all believed that it conferred.    Thus, evidence regarding the purported oral power of attorney was presented to the jury and the defense was able to explore this line of questioning.[27]    The trial record also shows that the power of attorney played no role at all in Lightfoot's transactions with the federal credit union.    Lightfoot did not inform Williams about a power of attorney during the transaction.    Neither the investigating officer, Sgt. Raynell Theard, nor Heather Rodgers, Director of Compliance for the Federal Credit Union, were made aware that a power of attorney even existed, and Rodgers made it clear that a power of attorney would not have authorized Lightfoot to open a new account with the credit union on Hawkins' behalf.[28]

Under the circumstances, the limitation imposed reasonable restrictions on Lightfoot's ability to present largely irrelevant evidence in his own defense and did not render the trial fundamentally unfair.    The state-court decision rejecting the claim that he

---

[27]    State Rec., Vol. 7 of 9, Trial Transcript, (Direct and Cross-Examination of Geralyn Hawkins), pp. 151-158; (Direct and Cross-Examination of John Hawkins), pp. 164-181; (Lightfoot), pp. 189-191.

[28]    State Rec., Vol. 7 of 9, Trial Transcript, (Theard), pp. 64-69; (Rodgers), pp. 129-133, 137.

was denied a meaningful opportunity to present a defense was not contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court. Accordingly, for the reasons expressed, he is not entitled to federal habeas relief on this claim.

B. *Sufficiency of the Evidence*

Lightfoot asserts that the evidence presented by the State was insufficient to convict him of monetary instrument abuse, forgery, bank fraud and fraudulent acquisition of a credit card.    In denying the claim on direct review, the Louisiana Fourth Circuit reasoned:

> Lightfoot argues that the State presented insufficient evidence to support his convictions for monetary instrument abuse, forgery, bank fraud, fraudulent and acquisition of a credit case. When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. *State v. Marcantel*, 2000-1629, p. 8 (La. 4/3/02), 815 So.2d 50, 55 (citing *State v. Hearold*, 603 So.2d 731, 734 (La. 1992)). This Court set forth the applicable standard of review for sufficiency of the evidence in *State v. Huckabay*, 2000-1082, p. 32 (La. App. 4 Cir. 2/6/02), 809 So.2d 1093, 1111, as follows:
>
>> In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Green*, 588 So.2d 757 (La. App. 4 Cir. 1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. *State v. Mussall*, 523 So.2d 1305 (La. 1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. *Mussall*; *Green*, *supra*. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." *State v. Smith*, 600 So.2d 1319, 1324 (La. 1992).
>
> *Huckabay*, 2000-1082, p. 32, 809 So.2d at 1111 (quoting *State v. Ragas*, 98-

0011, p. 13 (La. App. 4 Cir. 7/28/99), 744 So.2d 99, 106, 107). The testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction. *State v. Wells*, 2010-1338, p. 5 (La. App. 4 Cir. 3/30/11), 64 So.3d 303, 306. A factfinder's decision concerning the credibility of a witness will not be disturbed unless it is clearly contrary to the evidence. *State v. James*, 2009-1188, p. 4 (La. App. 4 Cir. 2/24/10), 32 So.3d 993, 996. Applying this standard, we will discuss each of the convictions for which Lightfoot contends there is insufficient evidence.

## MONETARY INSTRUMENT ABUSE

The crime of monetary instrument abuse requires the transfer of a forged monetary instrument with the intent to deceive another. The State submits that Lightfoot committed this crime by negotiating Hawkins' tax refund check. La. R.S. 14:72.2 provides:

A. Whoever makes, issues, possesses, sells, or otherwise transfers a counterfeit or forged monetary instrument of the United States, a state, or a political subdivision thereof, or of an organization, with intent to deceive another person, shall be fined not more than one million dollars but not less than five thousand dollars or imprisoned, with or without hard labor, for not more than ten years but not less than six months, or both.

B. Whoever makes, issues, possesses, sells, or otherwise transfers an implement designed for or particularly suited for making a counterfeit or forged monetary instrument with the intent to deceive a person shall be fined not more than one million dollars but not less than five thousand dollars, or imprisoned, with or without hard labor, for not more than ten years but not less than six months, or both.

This element was established by the presentation and negotiating of the tax refund check to Ms. Williams and signed by Lightfoot, in her presence, in the name Hawkins. Thus, we find the evidence submitted sufficient for the conviction of monetary instrument abuse.

## FORGERY

On August 19, 2016, Lightfoot went to the Credit Union with an ID and check representing himself as Hawkins. He intended to open and was successful in opening, a bank account in a name other than his own. La. R.S. 14:72 provides:

B. Issuing, transferring, or possessing with intent to defraud, a forged writing, known by the offender to be a forged writing, shall also constitute a violation of the provisions of this Section.

C. For purposes of this Section:

   (1) "Forge" means the following:

   (a)   To alter, make, complete, execute, or authenticate any writing so that it purports:

   (i)   To be the act of another who did not authorize that act...

   (b)   To issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged in accordance with the meaning of Subparagraph (1)(a).

   (2) "Writing" means the following:

   (a) Printing or any other method of recording information;

The documents used to open the account and the signature on the check was that of Lightfoot, not Hawkins. Forgery is defined as "the act of alter[ing]... execut[ing], or authenticat[ing] any writing so that it purports...[t]o be the act of another who did not authorize that act." La. R.S. 14:72(C)(1)(a) Lightfoot obtained a fraudulent ID card bearing the name of Hawkins, who had been incarcerated in Texas since 2003. He presented this fraudulent ID card to Ms. Williams in an attempt to defraud the Credit Union. Thus, we find the evidence submitted sufficient for the conviction of forgery.

## BANK FRAUD

The crime of bank fraud was committed by the act of defrauding the Credit Union, a financial institution, by opening an account in the name of Hawkins. Once the account was opened, Lightfoot could obtain funds and other assets. La. R.S. 14:71.1 defines bank fraud as follows:

A. Whoever knowingly executes, or attempts to execute, a scheme or artifice to do any of the following shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than one hundred thousand dollars, or both:

   (1)   To defraud a financial institution;

   (2)   To obtain any of the monies, funds, credits, assets, securities, or other property owned by or under the custody or control of a financial institution by means of false or fraudulent pretenses, practices, transactions, representations, or promises.

17

Lightfoot opened a checking account in the name of another in an attempt to defraud the Credit Union by requesting the Credit Union to provide him with an account in the name of Hawkins. Thus, we find the evidence submitted sufficient for the conviction of bank fraud.

## FRAUDULENT ACQUISITION OF A CREDIT CARD

Fraudulent acquisition of a credit card was established when Lightfoot completed and signed the credit card application, using false statements specifically related to his identity. La. R.S. 14:67.22 defines fraudulent acquisition of a credit card as follows:

A. As used in this Section, "credit card" shall mean any instrument or device whether known as a credit card, credit plate, bank service card, banking card, check guarantee card, debit card, or by any other name, including an account number, issued with or without a fee by an issuer for the use of a cardholder in obtaining money, goods, services, or anything of value on credit or for use in an automated banking device to obtain any of the services offered through the device.

B. No person shall make or cause to be made, either directly or indirectly, any false statement as to his identity or that of any other person, firm, or corporation, knowing it to be false and with the intent that it be relied on, for the purpose of procuring the issuance of a credit card.

Lightfoot completed an application for a credit card using false information. He signed the application as Hawkins. Thus, giving false and misleading information. It is of no moment that the credit card application was declined. The relevant facts necessary for this crime is that Lightfoot provided false information. Thus, we find sufficient evidence for the conviction of fraudulent acquisition of a credit card.

Lightfoot argues in defense of the crimes listed above that he possessed a power of attorney, given to him by Hawkins, which negates violations of the statutes. Nonetheless, the employees of the Credit Union were unequivocal in their testimony that Lightfoot never represented himself as having a power of attorney, he purported to actually be Hawkins. Moreover, the policy of the Credit Union was not to accept power of attorneys for the opening of bank accounts. The evidence presented at trial was that Lightfoot signed Hawkins' name, presented a state ID, bearing his photograph but the name Hawkins, to establish his identity as Hawkins when opening the account. Accordingly, our review of the evidence and testimony reveals that the evidence was sufficient for a finding of the crimes charged.[29]

---

[29]   *State v. Lightfoot*, 2018-0336, 2018 WL 6536999, at *2-4.

The Louisiana Supreme Court subsequently denied relief without additional stated reasons.

The Louisiana Fourth Circuit properly analyzed the sufficiency claim under *Jackson v. Virginia*, 443 U.S. 307 (1979).    The *Jackson* standard requires a determination whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.    *Jackson*, 443 U.S. at 319; *Williams v. Cain*, 408 F. Appx. 817, 821 (5th Cir. 2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008).

Review of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury.    *United States v. Young*, 107 F. Appx. 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").    Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict.    *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder.    *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.' "    *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis added)).

Because a claim challenging the sufficiency of the evidence presents a mixed question

of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Taylor v. Day*, Civ. Action No. 98–3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), *aff'd*, 213 F.3d 639 (5th Cir. 2000).    Moreover, because the state court's decision applying the already deferential *Jackson* standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."    *Parker v. Matthews*, 567 U.S. 37, 43 (2012); *see also Coleman v. Johnson*, 566 U.S. 650, 651 (2012).

Lightfoot claims that the State failed to satisfy a key element required to convict him of monetary instrument abuse.    He argues that the State failed to prove that the $9.00 state tax-refund check made out to Hawkins was counterfeit.    In fact, he asserts, the evidence adduced at trial showed that the check was authentic, and it was successfully negotiated creating a valid deposit.[30]    Thus, Lightfoot alleges "there is no 'counterfeit' $9.00 check and no forgery."[31]    Lightfoot misconstrues the statutory requirements under Louisiana Revised Statute 14:72.2, which provides that "[w]hoever makes, issues, possesses, sells, or otherwise transfers a counterfeit <u>or forged monetary instrument</u> of the United States, a state, or a political subdivision thereof, or of an organization, with intent to deceive another person, shall be fined not more than one million dollars but not less than five thousand dollars or imprisoned, with or without hard labor, for not more than ten years but not less than six

---

[30]  Rec. Doc. 16, pp. 15-16.

[31]  Rec. Doc. 16, p. 16.

months, or both."    La. R.S. 14:72.2 (emphasis added).    The statute further defines "forged" as "the false making or altering, with intent to defraud, of any signature to, or any part of, any writing purporting to have legal efficacy."    La. R.S. 14:72.2(C)(2).    Here, the evidence showed that even if the check was not counterfeit, Lightfoot transferred a forged state refund check with intent to deceive a federal credit union employee by representing himself to be Hawkins and signing the check with John Hawkins' name and his newly acquired account number.[32]    Lightfoot never denied this; he simply maintained that he had authority from Hawkins to do so.[33]    The appellate court thus reasonably found that the State met its burden of proving monetary instrument abuse.

As to the forgery conviction, Lightfoot asserts that "in order to constitute forgery, Mr. Hawkins (the victim) would have to state for the record that he did not give his consent or authorization."[34]    He points to Hawkins' emphatic testimony that he gave Lightfoot unlimited authority to sign his name and use his information, thereby giving Lightfoot "every right to endorse Mr. Hawkins' signature."[35]    Thus, he maintains that "as long as he possessed the authority of Mr. Hawkins to endorse his signature, there was no forgery."[36]

The bill of information charged Lightfoot with "forgery by willfully and unlawfully issuing, transferring or possessing with intent to defraud a forged writing, namely a

---

[32]  State Rec., Vol. 7 of 9, Trial Transcript (Lightfoot), p. 190; (Williams), pp. 92-93.

[33]  *Id.*, Trial Transcript (Mr. Hawkins), p. 181; (Lightfoot), pp. 190-91.

[34]  Rec. Doc. 16, p. 17.

[35]  Rec. Doc. 16, p. 17.

[36]  Rec. Doc. 16, p. 18.

Louisiana state identification in the name of 'John Hawkins' with intent to defraud Danielle Williams, and/or the Greater New Orleans Federal Credit Union."[37]    The writing underlying this charge was the state identification that Lightfoot unlawfully obtained using his own photograph and the name and personal information of John Hawkins.

The forgery statute provides that "it shall be unlawful to forge, with intent to defraud, any signature to, or any part of, any writing purporting to have legal efficacy.    La. R.S. 14:72 (A).    The statute further provides that, "issuing, transferring, or possessing with intent to defraud, a forged writing, known by the offender to be a forged writing, shall also constitute a violation of the provisions of this Section."    La. R.S. 14:72 (B).    The section provides the definitions of forge and writing, in pertinent part:

(1) "Forge" means the following:

(a) To alter, make, complete, execute, or authenticate any writing so that it purports:

(i) To be the act of another who did not authorize that act...

(b) To issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged in accordance with the meaning of Subparagraph (1)(a).

(c) To possess a writing that is forged within the meaning of Subparagraph (1)(a).

(2) "Writing" means the following:

(a) Printing or any other method of recording information;

La. R.S. 14:72 (C).

At trial, Stacie Serna of ABC Title testified that she processed the state renewal

---

[37]    State Rec., Vol. 1 of 9, Bill of Information (Count 2).

identification card for Lightfoot purporting to be Hawkins on April 21, 2016.    She had also

a month earlier processed a state identification card for Lightfoot, but she did not recognize

him when he sought renewal of a different identification card as Hawkins.    She testified

that Lightfoot's appearance was similar enough to the grainy picture on Hawkins' old

identification.[38]    On redirect, she was adamant that would not have issued the renewal

identification in Hawkins' name had she recognized Lightfoot.[39]    Using the forged

identification, Lightfoot then misrepresented himself to be John Hawkins by presenting that

fraudulent identification card to Williams in order to open an account under Hawkins' name

on August 19, 2016.    During the transaction, he pretended to be Hawkins and never

indicated he was attempting to act on behalf of Hawkins through a power of attorney or any

other legal instrument.    Credit union officials Shelley Sanders and Heather Rodgers

testified that upon review the application purportedly filled out and signed, "John Hawkins,"

did not match the photographic state-issued identification bearing the image they

recognized to be Lightfoot and containing the personal information of Hawkins.[40]    The

defense advanced the theory, which the jury apparently rejected, that Hawkins and Lightfoot

had a verbal agreement by which he authorized every single aspect of Lightfoot's illegal

activities, including signing for the state identification card and credit union accounts,

despite the fact that Lightfoot did not present any power of attorney when purportedly

"acting on Hawkins' behalf."    He mistakenly relies on civil law principles in a vain attempt

---

[38]  State Rec., Vol. 7 of 9, Trial Transcript, p. 73.

[39]  State Rec., Vol. 7 of 9, Trial Transcript, p. 86.

[40]  State Rec., Vol. 7 of 9, Trial Transcript (Sanders), pp. 113-14; (Rodgers), p. 121.

to support his contention that Hawkins' authorization absolved him of responsibility and guilt for the crime of forgery.    *See State v. Daigle*, 95-2393 (La. App. 1 Cir. 9/27/96), 681 So.2d 66, 69 (rejecting defendant's contention under civil law that what he did "may be illegal or even criminal," but if one authorizes another to sign his name for a fraudulent purpose, neither of them is guilty of forgery).    A power of attorney authorizing someone to act on another's behalf in financial dealings could not authorize someone to portray another person by assuming his identity on a state issued ID and using that ID to defraud another.    The state appellate court reasonably determined that the State sufficiently proved forgery based upon evidence that Lightfoot knowingly possessed and transferred the fraudulent state photo identification card with intent to defraud the credit union.

Regarding the bank fraud conviction, Lightfoot alleges that the State failed to establish any criminal intent by him to defraud the credit union or to execute a scheme or artifice, because he deposited an authentic check and cash funds with the objective simply to open an account for Hawkins with his permission and authorization, and no witness testified that Lightfoot affirmatively misrepresented his identity.    Lightfoot further alleges the "investigation revealed that the credit union did not lose one copper penny."[41]

Lightfoot incorrectly focuses on whether his actions immediately resulted in a monetary loss to the credit union.    The statute for bank fraud contains no such element. As set forth by the state appellate court, the statute for bank fraud provides:

> A. Whoever knowingly executes, or attempts to execute, a scheme or artifice to do any of the following shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than one hundred thousand dollars, or both:

---

[41]    Rec. Doc. 16, p. 19 (citing Transcript of Preliminary Conference/Motion to Suppress Hearing, (Sgt. Theard), pp. 15-16 at State Rec., Vol. 2 of 9).

(1)     To defraud a financial institution;

(2)     To obtain any of the monies, funds, credits, assets, securities, or other property owned by or under the custody or control of a financial institution by means of false or fraudulent pretenses, practices, transactions, representations, or promises.

Here, the evidence presented by the State established that Lightfoot portrayed himself to be Hawkins with false identification in order to apply for and open a checking account with the credit union in Hawkins' name.[42]    At no point in time did Lightfoot purport to act on behalf of Hawkins through a power of attorney.    Instead, he fraudulently assumed a different identity by portraying himself as another individual and signing all documents using that identity to obtain a checking account with the credit union.    Evidence of that scheme to obtain monies or funds from the federal credit union by means of false or fraudulent pretenses sufficiently constitutes bank fraud, as reasonably determined by the state court of appeal in this case.

Finally, Lightfoot challenges the conviction for fraudulent acquisition of a credit card on grounds that the State did not sufficiently prove he was not authorized to use Hawkins' true and accurate information and sign the application for the credit card in Hawkins' name, or that he was required to submit an ID when applying for the credit card.    Neither argument is relevant under the applicable statute, which provides:

A. As used in this Section, "credit card" shall mean any instrument or device whether known as a credit card, credit plate, bank service card, banking card, check guarantee card, debit card, or by any other name, including an account number, issued with or without a fee by an issuer for the use of a cardholder in obtaining money, goods, services, or anything of value on credit or for use in an automated banking device to

---

[42]   State Rec., Vol. 7 of 9, Trial Transcript, pp. 94-97.

obtain any of the services offered through the device.

B. No person shall make or cause to be made, either directly or indirectly, any false statement as to his identity or that of any other person, firm, or corporation, knowing it to be false and with the intent that it be relied on, for the purpose of procuring the issuance of a credit card.

As the state appellate court reasoned, "fraudulent acquisition of a credit card was established when Lightfoot completed and signed the credit card application, using false statements specifically related to his identity."[43]   The State sufficiently established that he completed the application using false and misleading information and signed the application <u>as</u> Hawkins, not as Lightfoot.

Although Lightfoot has maintained that he believed the power of attorney authorized him to assume Hawkins' identity or misrepresent himself as Hawkins for the transactions, the jury did not accept this argument.   The evidence plainly showed that he portrayed himself as Hawkins rather than ever straightforwardly attempting to act on Hawkins' behalf under a power of attorney.   Nor would a written power of attorney executed by an incarcerated felon-relative-by-marriage months after the transactions negate his criminal culpability for these offenses.   Regardless of whether he had authority to act on Hawkins' behalf, sufficient evidence existed to support the convictions in this case and the state court's determinations were reasonable in rejecting the sufficiency-of-evidence claims.   Lightfoot has not shown that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.   He is not entitled to relief on this claim.

---

[43]   *State v. Lightfoot*, 2018-0336, 2018 WL 6536999, at *4.

C. *Double Jeopardy*

Lightfoot argues that the State violated the protections against double jeopardy by charging him with four criminal offenses arising from a single incident.    He claims that the State "comingled" evidence, using evidence in each single count to prove its case on another count.    He cites to what the trial judge during the pre-trial hearing on the motion to quash the bill of information termed "rollover evidence," and argues that this method of establishing four separate crimes stemming from one single incident violates double jeopardy.[44]

The issue was raised pretrial by motion to quash the bill of information.    The trial court denied the motion to quash and that ruling was upheld by the appellate court on supervisory writs.[45]    The issue was raised again on direct appeal to the Louisiana Fourth Circuit Court of Appeal.    Although appellate counsel briefed nine assignments of error on Lightfoot's behalf on direct appeal, he did not raise a double- jeopardy claim.[46]    In a *pro se* appellant brief, Lightfoot asserted the claim on his own behalf alleging that the bill of information was inadequate and the charges constituted a violation of double jeopardy.[47]

---

[44]   Once again, to the extent Lightfoot requests that the Court review the propriety of the denial of the motion to quash the bill of information under state law, "federal habeas corpus relief does not lie for errors of state law." *Swarthout*, 562 U.S. at 219, 131 S.Ct. 859 (quoting *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (internal quotations omitted)). The Court on federal habeas review weighs only whether a violation of federal constitutional law occurred.

[45]   State Rec., Vol. 4 of 9, Motion to Quash; Transcript of Hearing (May 9, 2017), Ruling at pp. 16-17. *See also* State Rec., Vol. 8 of 9, *State v. Lightfoot*, 2017-K-0513 (La. App. 4 Cir. June 19, 2017).

[46]   State Rec., Vol. 8 of 9, No. 2018-KA-0336, Appellant Brief, p. 10 (Assignments of Error).

[47]   State Rec., Vol. 9 of 9, No. 2018-KA-0336, *Pro Se* Appellant Brief, p. 28 (Assignment

In denying the claim on direct appeal, the state appellate court applied the *Blockburger*

analysis under federal law:

> Lightfoot argues that the bill of information was inadequate because it failed to state the necessary elements to establish a crime and constitutes a violation of double jeopardy. Specifically, Lightfoot contends the bill of information was inadequate because he was charged with multiple violations arising out of the same incident or transaction. He further contends the trial court and this Court erred in finding the crimes charged in the single bill of information did not constitute double jeopardy. These arguments were previously raised in a motion to quash the bill of information and reviewed in a writ application filed by Lightfoot. We regard our previous writ denial as the law of the case; and, for the reasons that follow, decline to depart from our previous decision. *See State v. Lightfoot*, 2017-0513 (La. App. 4 Cir. 6/19/17).[48]

> The Fifth Amendment to the United States Constitution and Louisiana Constitution, Art. I, § 15 guarantees that no person shall be placed twice in jeopardy for the same offense. This guarantee protects against "a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *State v. Childs*, 2013-0948, p. 2 (La. App. 4 Cir. 1/15/14), 133 So.3d 104, 105 (citing *State v. Smith*, 95-0061, p. 3 (La. 7/2/96), 676 So.2d 1068, 1069. In *State v. Frank*, 2016-1160, p. 11 (La. 10/18/17), 234 So.3d 27, 33-34, our Supreme Court clarified that the protections against double jeopardy mandated by the federal constitution, as restated in this state's constitution, fall within the analytical framework set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) and Louisiana courts need only apply that framework in analyzing questions of double jeopardy.

No. 3).

[48]    The writ was denied but we stated, "We find that the trial court did not abuse its discretion in finding that double jeopardy was not violated." While we are cautious in our use of law of the case doctrine, we have applied the doctrine in some circumstances. "Despite this clear and sensible jurisprudential rule, we sometimes have applied the law-of-the-case doctrine to our prior writ denials if the language accompanying the denial suggests a ruling on the merits. *See State v. Berniard*, 14-0341, p. 23 (La. App. 4 Cir. 3/4/15), 163 So.3d 71, 87 (upon a finding that it had previously denied writ application "on the merits," court applied law of the case and declined to revisit issue); *State in Interest of A.S.*, 13-0144 (La. App. 4 Cir. 7/24/13), 156 So.3d 96 (denial of writ where court found no abuse of trial court's discretion warranted application of law-of-the-case doctrine); *State v. Golden*, 11-0735, pp. 12, 13 (La. App. 4 Cir. 5/23/12), 95 So.3d 522, 530-31 (court denied writ application "on the merits"; subsequently applied law-of-the-case doctrine to same issue)." *State v. Brown*, 2015-0855 (La. App. 4 Cir. 10/21/15), 176 So.3d 761.

Under the *Blockburger* test:

> [w]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger*, 284 U.S. at 304, 52 S.Ct. at 180.

In the case *sub judice*, each of the statutes under which Lightfoot was convicted required proof of a fact which the other did not. Monetary instrument abuse was committed by the act of negotiating the tax refund check, issued in the name of another. The State alleged that Lightfoot committed forgery by obtaining, possessing and using an ID in the name of Hawkins. Bank fraud required the State to establish that Lightfoot opened a checking account in the name of Hawkins in an attempt to defraud the Credit Union by providing him with an account under the name Hawkins; and fraudulent acquisition of a credit case required a showing that Lightfoot completed a credit card application seeking to obtain a credit card in the name Hawkins. Accordingly, Lightfoot's argument that his constitutional right against double jeopardy was violated is without merit.[49]

The Double Jeopardy Clause of the Fifth Amendment protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)).   In *Blockburger*, the United States Supreme Court determined that if each charged offense contains an element that is

---

[49] *State v. Lightfoot*, 2018-0336, 2018 WL 6536999, at *7-8 (footnote in original).    A review of the record reveals that this *pro se* claim was not raised in the Louisiana Supreme Court brief filed on his behalf by appointed counsel.    However, the writ application did include an Appendix – Volume II that contained a copy of the *pro se* appellant brief filed in the court of appeal.    In brief, the State concedes that all claims were exhausted in the state courts.    Rec. Doc. 13, p. 6.    No argument is made regarding whether the attached appendix suffced to present the issue.    Because the instant claim is clearly without merit, the Court may still consider the claim under *de novo* review even if Lightfoot has not fully exhausted his state court remedies.    28 U.S.C. § 2254(b)(2).

not contained in the other, the charges are not considered to be the same offense and are not

barred under the Double Jeopardy Clause.     *Blockburger v. United States*, 284 U.S. 299, 304,

52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).     In applying the test, the Court must "compare the

criminal statutes at issue and inquire whether each provision requires proof of an additional

fact that the other does not."     *United States v. Singleton*, 16 F.3d 1419, 1442 (5th Cir. 1994)

(citing *Blockburger*, 284 U.S. at 304); *accord Bias v. Ieyoub*, 36 F.3d 479, 480 (5th Cir. 1994).

As the Fifth Circuit explained:

> We apply the *Blockburger v. United States* [, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed.
> 306 (1932),] test to determine whether two different statutes punish the same
> offense. *Blockburger* requires us to compare the two statutes at issue and ask
> "whether each provision requires proof of an additional fact which the other
> does not." If either statute contains no element not also found in the other
> statute, the statutes "fail" the *Blockburger* test and the defendant may not be
> punished under both of them "in the absence of a clear indication of contrary
> legislative intent." Two statutory offenses need not be identical to constitute
> the same offense for double jeopardy purposes. The *Blockburger* inquiry
> focuses on the statutory elements of the offenses, not on their application to
> the facts of a specific case before the court. Thus, the question is not whether
> *this* violation of [the first statute] also constituted a violation of [the second
> statute], but whether *all* violations of the former statute constitute violations
> of the latter.

*Singleton*, 16 F.3d at 1422 (emphasis in original) (footnotes omitted).

The four criminal statutes at issue were set out, in relevant part, in the previous

section.     Lightfoot was charged with the crime of monetary instrument abuse involving

transferring a counterfeit or forged monetary instrument of the United States, a state, or a

political subdivision thereof, or of an organization, with intent to deceive (*i.e.*, negotiating the

state income tax refund check).     La. R.S. 14:72.2(A).     He was also charged with the crime

of forgery for possessing or transferring a forged writing with intent to defraud (*i.e.*, the

Louisiana state identification).     La. R.S. 14:72.     The criminal charge of bank fraud was

based on knowingly executing a scheme or artifice to defraud a financial institution or obtain

any of the monies, funds, credits, assets etc. under the control of a financial institution by means of false pretenses or representations (*i.e.*, opening accounts in another individual's name by misrepresenting his identity).    La. R.S. 14:71.1.    Finally, the charge of fraudulent acquisition of a credit card was based on making a false statement as to his identity, with the intent that it be relied on, for the purpose of procuring the issuance of a credit card (*i.e.*, completing the credit card application in Hawkins' name).    La. R.S. 14:67.22.    Even though the charges arose from a single visit Lightfoot made to the federal credit union to open accounts, each criminal charge required the State at trial to prove an additional fact based on distinct elements that the others did not.    *See*, *e.g.*, *Letell v. Leblanc*, Civ. Action No. 15-5008, 2016 WL 3526020, at *7-8 (E.D. La. June 8, 2016), *adopted* 2016 WL 3448183 (E.D. La. June 22, 2016).    Lightfoot was not twice put in jeopardy for the same offense. Accordingly, he is not entitled to relief on the double-jeopardy claim.

   *D. Authentication of Evidence*

   Finally, Lightfoot disputes the state-court ruling allowing the State to use copies of certain documents rather than the originals, over the defense's objection at trial, in violation of state procedural law, namely Louisiana Code of Evidence Article 901, requiring authentication as a condition for admissibility.    Lightfoot's argument on appeal was based entirely on state law.[50]    The state-law claim was addressed and rejected by the appellate court:

> Lightfoot contends the State failed to properly authenticate copies of the income tax check; the application submitted by Lightfoot to open the checking account; and documentation provided to ABC Title to obtain the ID. He argues the State introduced copies of documents rather than the originals. The

---

[50]   State Rec., Vol. 8 of 9, No 2018-0336, Appellant Brief, p. 23 (Assignment of Error No. 8).

documents admitted were stored electronically, thus, maintained electronically in the regular course of business. La. C.E. art. 1003.1 provides that "duplicate may not be deemed inadmissible or excluded from evidence solely because it is in electronic form or is a reproduction of electronically imaged or stored records, documents, data, or other information." The record reflects that each of the documents placed into evidence were identified by the individual entering the information into the computer or receiving the information. All documents were kept in the regular course of business for the banking institution and properly submitted into evidence. The State provided testimony from the individuals with personal knowledge that the documents were what they were purported to be; thus, we find the evidence was properly admitted pursuant to La. C.E. arts 901 and 1003.1. Thus, we find no merit to this assignment of error.

Lightfoot's claim before this Court raises only a state-law evidentiary issue that is not cognizable on federal habeas corpus review. A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." *Wilkerson v. Whitley*, 16 F.3d at 67 (quotation omitted); *see also Swarthout v. Cooke*, 562 U.S. at 219 (federal habeas review does not lie for errors of state law). Lightfoot has not alleged a cognizable federal constitutional violation for this Court to address. Thus, he is not entitled to relief on this claim.

## **DISCOVERY MOTION AND ORDER**

Finally, Lightfoot moves the Court via his "discovery motion" to allow him to "depose" witnesses, including himself, through questioning by the undersigned. He alleges that a key element was misrepresented during his criminal proceedings in order to convict him of monetary instrument abuse, and the Respondent's counsel has knowingly perpetuated that falsity in these federal habeas proceedings.

Discovery is not granted automatically in federal habeas matters. Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts states, in pertinent part, that "[a] judge may, for good cause, authorize a party to conduct discovery under the

Federal Rules of Civil Procedure and may limit the extent of discovery."   Rule 6(a)—Section

2254 Cases.   As the United States Fifth Circuit Court of Appeals has explained, discovery in

federal habeas proceedings must be warranted:

> A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of course. *Bracy v. Gramley*, 520 U.S. 899, 904, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997). The habeas petitioner is entitled to discovery only where "good cause" is shown. *Id.* The Supreme Court has held that good cause is shown where "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief." *Harris v. Nelson*, 394 U.S. 286, 300, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969).

*Reed v. Quarterman*, 504 F.3d 465, 471-72 (5th Cir. 2007).

Lightfoot's purported "good cause" in this case stems from his alleged "recently

discovered and exposed violations of *Napue vs. Illinois*, 360 U.S. 264, 79 S.Ct. 1173 (1959)."[51]

He claims the *Napue* violations only recently surfaced as the result of a December 2019 letter

written by his criminal defense attorney in an unrelated criminal case (in which the State

intended to use "other crimes evidence"), where defense counsel questioned the evidence

underlying Lightfoot's prior conviction, specifically the purported "counterfeiting" of a $9.00

tax refund check that was in fact shown to be authentic.[52]   Lightfoot maintains that

Respondent's counsel in these federal habeas proceedings has refused to acknowledge the

---

[51]  Rec. Doc. 17, p. 1.

[52]  Rec. Doc. 17, pp. 16-17 (Exhibit A-1, 2) (Orleans Parish Case No. 526-574). His argument concerning "counterfeiting" has been addressed herein in the context in which it was raised (*i.e.*, sufficiency of the evidence). Although he alleges that he only recently discovered the violations, Lightfoot has been making the argument challenging the evidence underlying these convictions for quite some time, not only in this case but in other federal criminal proceedings in which evidence of those prior convictions was to be used against him. *See, e.g.*, *United States v. Lightfoot*, Civ. Action 17-00274, 2019 WL 758610, at *2 (W.D. La. Feb. 19, 2019).

misrepresentations he has brought to light, and thus her actions violate *Napue*.    He seeks
to develop these facts in more detail by questioning several witnesses.

The Supreme Court has made it clear that good cause is established only if "specific
allegations before the court show reason to believe that the petitioner may, if the facts are
fully developed, be able to demonstrate that he is confined illegally and is therefore entitled
to relief."    *Harris v. Nelson*, 394 U.S. at 300.    Notably, Lightfoot has not presented a *Napue*
claim in the state or federal courts.    Even if he had raised a *Napue* claim in his federal
habeas petition, he has not shown that full development of the facts alleged would entitle
him to relief.    Essentially, his *Napue* claim involves current counsel for the State in federal
habeas proceedings failing to acknowledge what Lightfoot terms a "misrepresentation" by
the state prosecutor when arguing at a motion to quash hearing concerning double
jeopardy.[53]    Lightfoot cites no authority to support such a claim under *Napue v. Illinois*,
even if he had raised one in these proceedings, which he has not.    *Napue* plainly does not
encompass this situation.    *Napue*, 360 U.S. at 269 ("[A] conviction obtained through use of
false evidence, known to be such by representatives of the State, must fall under the
Fourteenth Amendment[.]").    Here, as previously stated, the record before the Court
suffices to resolve Lightfoot's claims.    *See* Rule 7—Section 2254 Cases ("[i]f the petition is
not dismissed, the judge may direct the parties to expand the record by submitting additional
materials relating to the petition.").

Accordingly, **IT IS ORDERED** that Lightfoot's Motion for Discovery is **DENIED**. (Rec.
Doc. 17).

---

[53]  Rec. Doc. 17, p. 5, citing May 2017 Motion to Quash transcript.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Lightfoot's application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[54]

New Orleans, Louisiana, this ___25th___ day of ___September___, 2020.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[54] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.